

1   Michael W. Sobol (State Bar No. 194857)
    Nicole D. Reynolds (State Bar No. 246255)
2   LIEFF CABRASER HEIMANN & BERNSTEIN LLP
    275 Battery Street, 29th Floor
3   San Francisco, CA 94111
    Telephone: (415) 956-1000
4   E-mail: msobol@lchb.com
    nreynolds@lchb.com
5
    Daniel M. Hattis (State Bar No. 232141)
6   HATTIS LAW
    1134 Crane Street, Suite 216
7   Menlo Park, CA 94025
    Telephone: (650) 980-1990
8   E-mail: dan@hattislaw.com

9   Cornelius P. Dukelow (to be admitted *pro hac vice*)
    ABINGTON COLE
10  320 South Boston Avenue, Suite 1705
    Tulsa, Oklahoma 74103
11  Telephone: (918) 588-3400
    E-mail: cdukelow@abingtonlaw.com
12

13  *Attorneys for Plaintiffs*

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16                  SAN FRANCISCO DIVISION                    DMR

17

18  DAVID HANSEL, EDWARD TOOLEY,          Case No.  CV  13  3440
    and CHRISTOPHER VALDEZ,
19  individually and on behalf of all others
    similarly situated,                    **CLASS ACTION COMPLAINT**
20
                    Plaintiffs,            **JURY TRIAL DEMANDED**
21
    v.
22
    TRACFONE WIRELESS, INC., d.b.a.
23  STRAIGHT TALK WIRELESS, and
    WAL-MART STORES, INC.,
24
                    Defendants.
25

26

27

28

                                                    CLASS ACTION COMPLAINT

1121998.4

Plaintiffs, individually and on behalf of all others similarly situated, allege on personal knowledge, investigation of their counsel, and on information and belief as follows:

## NATURE OF THE ACTION

1.     This proposed class action alleges that TracFone Wireless, Inc. ("TracFone") and Wal-Mart Stores, Inc. ("Walmart," together with TracFone, "Defendants") falsely advertise Straight Talk cellular phone plans as providing "unlimited" data service, when in fact the Straight Talk subscribers in the class have had their supposed "unlimited" data service "throttled" or terminated.

2.     Defendants co-founded Straight Talk in 2009, and since that time have continuously advertised "unlimited" data service plans, thereby becoming one of the largest prepaid phone brands in the United States.

3.     Defendants prominently advertise that Straight Talk wireless plans include "unlimited" data, but fail to disclose that Defendants "throttle" (*i.e.* reduce the speed of), or terminate altogether, subscribers' access to data.  On information and belief, Defendants throttle or terminate data access when subscribers near or exceed Defendants' internally established, but undisclosed, data usage limits, or when Defendants' wireless network partners (*e.g.* AT&T) direct Defendants to do so even where subscribers' usage is below Defendants' internal, undisclosed limits in order to limit the strain on Defendants' wireless partners' networks.

4.     In response to complaints from the members of the proposed Class, Defendants routinely blame customers for "misusing" their data service, but fail to disclose how customers allegedly misused their data or explain the reasons that Defendants have throttled or terminated customers' data access.

5.     After Defendants throttle or terminate data service to their "unlimited" data plan customers, they engage in the practice of failing to restore data access or regular data speeds unless and until subscribers' current prepaid data plans expire *and* subscribers purchase new Straight Talk service plans.

1121998.4

CLASS ACTION COMPLAINT

6.      As a result of Defendants' material misrepresentations, bad faith, and unfair and unlawful conduct, Plaintiffs and Class members have suffered damages, including, without limitation, payment for "unlimited" data service plans, payment for Straight Talk branded and locked smartphones (which cannot be used with other wireless carriers), or payment for Straight Talk SIM cards.

7.      On behalf of themselves and the Class, Plaintiffs bring this lawsuit against Defendants for breach of contract; breach of the covenant of good faith and fair dealing; unconscionability; unjust enrichment; and violation of Florida's Deceptive and Unfair Trade Practices Act, California's Unfair Competition Law, and California's Consumer Legal Remedies Act.

## PARTIES

8.      Plaintiff David Hansell is an individual residing in Redondo Beach, California.

9.      Plaintiff Edward Tooley is an individual residing in Alameda, California.

10.     Plaintiff Christopher Valdez is an individual residing in San Diego, California.

11.     Defendant TracFone Wireless, Inc. is a Delaware corporation and is headquartered in Miami, Florida.  TracFone is the fifth largest wireless carrier in the United States, with over 23.2 million subscribers as of March 2013.  TracFone holds multiple agreements with the United States' largest wireless telecommunications companies, including Verizon, AT&T, Sprint, and T-Mobile, to use their networks to provide wireless service.

12.     Defendant Wal-Mart Stores, Inc. is headquartered in Bentonville, Arkansas. Walmart is the largest retailer in the world, and is one of the largest corporations in the world. Walmart is the exclusive retailer of Straight Talk prepaid service plans, wireless phones, and SIM cards.

13.     TracFone and Walmart launched the Straight Talk brand as a joint venture on October 14, 2009.

1121998.4

CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

14.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.
§ 1332(d)(2) as the amount in controversy exceeds $5,000,000 among the proposed nationwide
Class, believed to number at least in the tens of thousands, who are entitled to damages in the
amount of the purchase price of Straight Talk "unlimited" service plans, compatible phones, and
SIM cards.

15.     This Court has personal jurisdiction over Defendants because they are authorized
to do business and regularly conduct business in California, and they marketed, sold, and issued
Straight Talk service plans, phones, and SIM cards in California.  Defendants have conducted
business in California with certain of the Plaintiffs.   Defendants have sufficient minimum
contacts with this state to render the exercise of jurisdiction by this Court permissible.

16.     Venue is proper under 28 U.S.C. §§ 1391(a) and (b) because a substantial part of
the events or omissions giving rise to Plaintiffs' claims occurred in this District.

**COMMON FACTUAL ALLEGATIONS**

A.     **Defendants Falsely Advertise Straight Talk Wireless Phone Plans as
Providing "Unlimited" Data.**

17.     Since Defendants co-founded Straight Talk in 2009, Straight Talk has become one
of the largest prepaid phone brands in the United States.

18.     Defendants market and sell Straight Talk branded prepaid wireless service plans,
phones, and SIM cards at Walmart stores, online at Walmart.com or StraightTalk.com, or over the
phone.

19.     Defendants offer two wireless phone plans: The Straight Talk "All You Need"
service plan with data expressly limited to 30MB per month and the Straight Talk "Unlimited"
service plan which Defendants advertise as including "unlimited" data.  Consumers may sign up
for the "unlimited" data plan by purchasing a 1-month, 1-month international, 3-month, 6-month,
or 1-year service plan for $45, $60, $130, $255, or $495, respectively.

20.     Straight Talk branded and locked smartphones currently comprise approximately
70% of the phone models offered for sale by Straight Talk.  On January 8, 2013, Defendants

began selling Straight Talk branded iPhones, in addition to their Android smartphone lineup. Walmart offered special no-interest financing for Straight Talk iPhones purchased at its stores.

21. In February 2012, Defendants promoted their "Bring Your Own Phone" program as a new way for consumers to sign up for Straight Talk's "unlimited" data plan. Through this program, Defendants sell Straight Talk SIM cards to enable the "unlimited" plan on unlocked AT&T or T-Mobile compatible GSM smartphones. In April 2013, Defendants expanded this program such that unlocked Verizon compatible CDMA smartphones may be used with the Straight Talk "unlimited" plan without a Straight Talk SIM card.

22. Defendants continue to aggressively and consistently promote the supposed "unlimited" data plan in order to capture the burgeoning smartphone market. Defendants' advertising and packaging of Straight Talk phones, SIM cards, and data plans feature the word "unlimited" in prominent font. Below are examples of Defendants' marketing for their Straight Talk "unlimited" plan:








CLASS ACTION COMPLAINT

23.     Defendants' widespread marketing for Straight Talk's "unlimited" data plan induced millions of new smartphone users to subscribe to Straight Talk's "unlimited" plan.

24.     Defendants' promise of "unlimited" data is material to consumers.

25.     Upon information and belief, the networks accessed by Straight Talk's data plans (AT&T, Verizon, Sprint and T-Mobile) have complained to Defendants about the ever-increasing strain being placed on their respective networks by growing numbers of Straight Talk "unlimited" data plan subscribers.

**B.      Defendants Regularly Throttle or Terminate "Unlimited" Subscribers' Access to Data.**

26.     To control network data usage and costs, Defendants have implemented monthly data usage limits which they fail to disclose to their "unlimited" data plan subscribers.  A former Straight Talk employee stated that the monthly data cap in 2012 was between 2GB – 3GB, having been reduced from a prior 5GB limit at the behest of Defendants' network carrier partners.[1]  More recently, the lower bounds of the limit may have been reduced to 1.5GB, based on customer reports.  Defendants actively conceal these limits from "unlimited" data customers.

27.     Defendants throttle data speeds or terminate their "unlimited" customers' data, typically without any notice or warning, when those customers exceed Defendants' undisclosed data usage limits.  At the direction of Defendants' wireless network partners, Defendants also regularly and arbitrarily throttle or terminate "unlimited" customers' data even when a customer's data usage is below Defendants' undisclosed limits.

28.     Defendants publicly deny having any "fixed" limits on data usage and claim that "most customers who experience throttling" are engaged in "unauthorized uses" set forth in the Straight Talk "Terms and Conditions."[2]  But these Terms and Conditions are not reasonably disclosed or agreed to by customers, and are also riddled with vague, confusing, contradictory, and unconscionable provisions.

---

[1] Discussion on XDADEVELOPERS.COM, *Have questions for StraightTalk/Net10/Tracfone?* (*available at* http://forum.xda-developers.com/showthread.php?t=1641966).

[2] Sascha Segan, *Straight Talk Responds to "Unlimited" Complaints*, PCMAG.COM, January 28, 2013 (*available at* http://www.pcmag.com/article2/0,2817,2414768,00.asp).

29.     Defendants fail to disclose their data usage limits to customers or explain the reasons why their data was throttled or terminated.  Customers contacting Defendants about their data being throttled or terminated are typically transferred to a recorded message on Defendants' "High Data Usage Hotline."  The message recites to customers that their data service may have been suspended or reduced "due to violation of our Terms and Conditions" and that "our customer care representatives cannot override this policy to restore" data access.  The message then suggests "tips" to reduce data usage such as syncing emails no more than once an hour, refraining from browsing regular internet websites (as opposed to "mobile friendly" websites), and downloading a data usage app to "better understand and manage your monthly data plan."[3]

30.     Even in the few instances when a customer is fortunate enough to speak to or "chat" via the internet with a live customer service representative, Defendants refuse to provide a clear answer as to why they throttled or terminated any particular customer's data.  One Straight Talk representative provided the following inscrutable "explanation" to a customer: "[P]lease be informed that, the magnitude of data transmitted from your phone is recorded by our system on a daily basis and the determination of its impact to the totality of our system's capacity is solely done by itself.  If our system detects that your phone is transmitting abnormally excessive amount of data and is negatively impacting its capacity to provide service."  When the customer asked what his data usage had been, and what Straight Talk's data limit is, the Straight Talk representative responded as follows: "We do not have the exact limitations for data usage especially if you are on the unlimited service. . . . We regret to inform you that, we are unable to provide you with the estimated threshold or limitation set by the company for your internet service usage."[4]  When Plaintiff Christopher Valdez asked a Straight Talk representative how much data he had used before Defendants terminated his data, the representative claimed that he

---

[3] "High Data Usage Hotline" recorded message, reachable at 866.793.0474.
[4] Laura Northrup, *Straight Talk Cuts Off My Data, Will Only Explain Why In Confusing Doublespeak*, CONSUMERIST, March 20, 2013 (*available at* http://consumerist.com/2013/03/20/straight-talk-cuts-off-my-data-will-only-explain-why-in-confusing-doublespeak/).

CLASS ACTION COMPLAINT

1121998.4

was unable to provide that information because Straight Talk's systems do not show customer data usage information.

31.     Straight Talk's refusal to explain under what circumstances it will throttle or terminate data make the practice all the more unclear and deceptive to consumers. As one disenchanted Walmart employee who had dealt with a number of customer complaints about Straight Talk put it, "The inconsistency is what gets me the most. You never know WHEN they are going to do it, you just have to go about your life with a huge data axe above your head. The next time you comment on your friends' picture could be the last."[5]

32.     As Consumerist put it, Defendants' policy of throttling or terminating its "unlimited" subscribers' data boils down to the following: "[W]e will cut you off if you use too much data, but we won't tell you how much you used, and we can't tell you when you'll get cut off."[6]

33.     Upon information and belief, Defendants terminate customers' data at the behest of their wireless network partners when a particular cell tower is at or near data capacity, regardless of whether that customer's data usage has exceeded Defendants' secret data usage limits. Upon information and belief, network partners such as AT&T are concerned that Straight Talk customers' data usage on their networks may negatively impact their ability to provide their own direct customers with service, and thus require Defendants to restrict the data usage of Straight Talk customers. TracFone Executive Resolution Specialist, Juanita Woodside, said the following to a customer in response to his FCC and BBB complaints: "Tracfone/straight talk doesn't track your usage, AT&T or T-Mobile does. When on a given cell phone tower (AT&T or T-Mobile), and you use a lot of data, this affects other subscribers."[7]

34.     Defendants have terminated customers' data after they used as little as 30MB in a day. Defendants terminated Plaintiff Christopher Valdez's data after he used 700MB in a two-

---

[5] Comment by "jatwalmart" to article by Alex Kuklinski, *Straight Talk's 'Unlimited' Data Plan is Bullshit,* TECHNO FYI, May 13, 2013, (*available at* http://technofyi.com/2013/05/13/straight-talks-unlimited-data-plan-is-bullshit/).

[6] *Id.*

[7] http://www.howardforums.com/showthread.php/1765893-A-limit-according-to-Tracfone

CLASS ACTION COMPLAINT

1121998.4

week period, which is equal to the average data Verizon iPhone customers used in the same two-week period.[8]

### C. Defendants Unfairly and Unlawfully Blame Customers for Purportedly Violating Never-Disclosed and Unconscionable "Terms and Conditions."

35. Defendants often tell customers that their "unlimited" data has been throttled or terminated because they allegedly violated the Straight Talk "Terms and Conditions" that Defendants purport to apply to Straight Talk phones, SIM cards, and service plans. But these terms are never adequately disclosed to consumers and contradict Defendants' prominent and consistent advertisements that Straight Talk plans are "no contract" plans.

36. Defendants do not require consumers who purchase Straight Talk phones, SIM cards, or service plan cards to view the Terms and Conditions before making their purchase.

37. The Terms and Conditions are not referred to and are not available anywhere on Walmart.com's website. On StraightTalk.com, the Terms and Conditions are hidden in tiny text in a link at the footer of the website's home page, which a consumer must click to have the Terms and Conditions open in a small window. This small window allows a customer to view in miniscule text, but not to print, the Terms and Conditions.

38. The Terms and Conditions are not provided with the Straight Talk service plan cards purchased at Walmart stores. The front of the service card, in very large white text on black background, features the word "UNLIMITED" next to "Minutes, Texts & Data." Hidden on the back of the card, in tiny text, is a statement that use of the service card is subject to unspecified "Terms and Conditions of Service at StraightTalk.com, which are subject to change without prior notice." Below are photographs of the front and back of the service card:

---

[8] Dan Graziano, *Study Finds iPhone Owners to be More Data Hungry than Android Users*, BGR, March 20, 2013 (*available at* http://bgr.com/2013/03/20/iphone-android-data-usage-study-387882/).

- 9 -

CLASS ACTION COMPLAINT

1121998.4

**Front**                    **Back**



*Certain limitations apply. Please refer to Terms and Conditions of Service. Purchase and use of this Service Card is subject to the Terms and Conditions of Service at StraightTalk.com, which are subject to change without prior notice. Straight Talk reserves the right to terminate your service for unauthorized or abnormal usage. ©2013 TracFone Wireless, Inc. All rights reserved. The stylized spiral logo and Straight Talk are registered trademarks of TracFone Wireless, Inc.*

39.    Defendants do not mention the Terms and Conditions when a customer purchases or activates a Straight Talk service plan, smartphone, or SIM card over the telephone.

40.    Inside the packaging of Straight Talk phones and SIM cards, Defendants hide the Terms and Conditions in a shrink-wrapped "Services Guide" booklet. The cover of the booklet directs customers to "Use the Activation Card First." It does not mention the existence of the Terms and Conditions, which are buried in the middle of the booklet in tiny text. Below is a photo of the Services Guide booklet to Plaintiff David Hansell's Samsung Galaxy S II:



CLASS ACTION COMPLAINT

41.     The Terms and Conditions claim that, by purchasing or activating Straight Talk phones, SIM cards, or data plans, customers agree to them, despite that fact that consumers purchase and activate their phones, SIM cards, or data plans *prior* to even having an opportunity to view the Terms and Conditions.  Moreover, Straight Talk and Walmart do not allow returns of service cards, service plans, or SIM cards, such that a consumer who reads and decides to reject the Terms and Conditions is unable to do so.

42.     The Terms and Conditions are illusory in that they purport to allow Straight Talk to change any of the terms at any time without notice to or consent from its customers: "Straight Talk reserves the right to change or modify any of these Terms and Conditions of Service at any time and in its sole discretion.  Any changes or modifications in these Terms and Conditions of Service will be binding upon you once posted on the Straight Talk website found at www.StraightTalk.com."

43.     Defendants typically point to Sections 6 and 7 of the Terms and Conditions as the reason for throttling or terminating customers' data.  Defendants wrote in an email to Plaintiff David Hansell that "[m]ost customers who experience throttling of their data service are engaged (knowingly or unknowingly) in one or more unauthorized uses that are described in greater detail in our terms and conditions of service" in Sections 6 and 7.

44.     Sections 6 and 7 of the Terms and Conditions are vague, confusing, and likely to mislead consumers.

45.     Up until approximately January 30, 2013, Section 7 of the Terms and Conditions ambiguously prohibited "access to the Internet, intranets, or other data networks except as the device's native applications and capabilities permit."  This poorly written provision could arguably be read to encompass the installation and use of any smartphone application not preinstalled on the phone, but such a reading would be extreme and contrary to consumers' reasonable expectations.  Section 7 also prohibits "tethering"; *i.e.* connecting one's phone to a computer to share Straight Talk's data connection.

1121998.4

CLASS ACTION COMPLAINT

46.    Up until approximately January 30, 2013, Section 6 provided that Straight Talk service plans may only be used for "Internet browsing through the Straight Talk Mobile Web Service" and "Authorized Content Downloads from the Straight Talk Mobile Web Store." Section 6 explicitly prohibited "uploading, downloading or streaming of audio or video programming or games." But, contradictorily and confusingly, the same section later provided that "downloading legally acquired songs" is an example of a permitted use.

47.    On or about January 30, 2013, Defendants modified Section 6, which now provides that Straight Talk data plans may only be used for "Internet browsing and ordinary content Downloads." Section 6 no longer provides that "uploading, downloading, or streaming of audio or video programming or games" are prohibited uses, but instead forbids "uploading, downloading, or streaming uninterrupted continuous video."

48.    Despite Section 6 purporting to prohibit at least some types of video and music uploading, downloading, or streaming, Defendants publicly promote and encourage consumers to use their Straight Talk phones and data plans to download and stream music and videos. Straight Talk television commercials, marketing materials, and advertisements feature consumers using Straight Talk smartphones to play videos on YouTube and Netflix and stream music on Pandora. Defendants also preload streaming video apps, such as YouTube, on Straight Talk smartphones. In a post on Straight Talk's blog dated May 17, 2013, Straight Talk promoted a new Samsung phone as being able to "[d]o two things at once: watch a video as you email or text."[9]

49.    After PCMag published an article titled "How Straight Talk's TOS Makes Most iPhone Users Criminals" noting that Straight Talk's terms, while contradictory and confusing, could be read to be more restrictive than those of any other wireless phone carrier and to prohibit basic smartphone functions,[10] Defendants publicly responded as follows: "[T]here is no prohibition against downloading movies, watching live TV or other live video."[11]

---

[9] *The Next Big Thing Has Arrived: The Samsung Galaxy S III*, STRAIGHT TALK BLOG, May 17, 2013 (*available at* http://www.straighttalkblog.com/).

[10] Sascha Segan, *How Straight Talk's TOS Make Most iPhone Users Criminals*, PCMAG.COM, January 17, 2013 (*available at* http://www.pcmag.com/article2/0,2817,2414418,00.asp).

[11] Sascha Segan, *Straight Talk Responds to "Unlimited" Complaints*, PCMAG.COM, January 28, 2013 (*available at* http://www.pcmag.com/article2/0,2817,2414768,00.asp).

50.     Despite this proclamation, Straight Talk representatives continue to tell customers that their data was terminated for reasons Defendants have publicly claimed to not be prohibited uses.  As recently as June 13, 2013, a Straight Talk representative posted on Straight Talk's Facebook page, in response to a customer asking why his data was terminated, that "unlimited" data is "not for audio/video streaming."

51.     Section 6 also discusses Straight Talk's discretion to throttle or terminate data. Section 6 purports to allow Straight Talk to throttle or terminate data service "in order to protect the Carrier's network from harm due to any cause including, without limitation, the excessive and/or improper use of Straight Talk service" or where Straight Talk believes a customer "is using the Straight Talk Unlimited Talk, Text and Mobile Web Access Plan in any manner prohibited above or whose usage, in Straight Talk's sole discretion, adversely impacts the Carrier's network or customer service levels."  Despite seemingly putting some limits on its discretion in the above provisions, Section 6 concludes by purporting to allow Straight Talk to terminate data to anyone, at any time, with no notice, and for any reason or no reason at all: "Straight Talk may modify or cancel any Service or take corrective action at any time without prior notice and for any reason, including but not limited to your violation of this agreement."  Up until approximately May 2013, Section 6 also provided as follows: "Notwithstanding the foregoing, Straight Talk reserves the right to deny service, deactivate or cancel existing service, terminate data connections and/or reduce data throughput speeds, to anyone for any reason at any time, in Straight Talk's sole discretion."

52.     Nowhere in Sections 6 or 7, or anywhere else in the Terms and Conditions, do Defendants state a specific data usage cap or limit.

**D.     Defendants Refuse To Restore Subscribers' Data, if Ever, Unless and Until Their Current Data Plans Expire *and* They Purchase New Data Plans.**

53.     Once Defendants throttle or terminate a customer's data, Defendants will not restore that customer's data until the customer's current data plan expires and the customer purchases a new data plan.  This is true even if the customer has subscribed to the longer 6-month or 1-year data plan, as did Plaintiff David Hansell, and the expiration date of the plan is several

CLASS ACTION COMPLAINT

months away. Defendants explain to customers that "customer care representatives cannot override this policy to restore your service to its original data speed. Adding a plan prior to your service end date also will not restore your original data speed."[12]

54.    Even after waiting until their plan has expired and paying for a new data plan, some customers find that their data remains restricted in the new data plan period. One Straight Talk customer service representative admitted that Defendants maintain a secret "blacklist" of subscribers whose data will never be restored to full speed, even if they pay for a new data plan. Defendants provided the following after-the-fact response to one such customer's complaint: "Unfortunately, you will no longer be able to go back to your previous data speed. Your data service will be restored but in a reduced speed."[13]

### E.    Defendants' Practices are Unfair and Likely to Mislead Consumers.

55.    Reasonable consumers are likely to be misled by Defendants' promise of "unlimited" data, particularly in combination with Defendants' advertisements that encourage customers to use Straight Talk smartphones and data plans in typical ways such as browsing the internet, streaming or downloading music and videos, running apps, and using GPS navigation. As one article critiquing Defendants' practices explains: "Consumers have to be able to quickly and easily compare competing mobile plans in order to make informed decisions. It should not require wading through paragraphs of terms and conditions just to discover that a huge selling point – unlimited – does not really mean what you might think."[14]

56.    Once customers discover the truth about Defendants' "unlimited" plans, customers are outraged by Defendants' lies and bad faith practices. Angry customers have flooded Straight Talk's Facebook page, turning it into a virtual complaint board. Straight Talk's official online forum, Straighttalkwirelessforum.com, is also full of complaints from frustrated customers whose data has been throttled or terminated. Many more customers have posted complaints on

---

[12] "High Data Usage Hotline" recorded message, reachable at 866.793.0474.

[13] Kuklinski, *supra.*

[14] Weinberg, Michael, *How Can "Unlimited Data" From a Company Called Straight Talk be Ambiguous?*, Public Knowledge, October 19, 2009 (*available at* http://www.publicknowledge.org/node/2705).

1121998.4

CLASS ACTION COMPLAINT

consumer websites such as Consumeraffairs.com, Boycottowl.com, Howardforums.com,

Pissedconsumer.com, and Ripoffreport.com. The following are examples of typical complaints:

"I bought a Straight Talk phone and the service. The service card you buy for the phone says unlimited data, unlimited talk text and web, which is all a lie. My internet on my phone keeps getting suspended to what they say is over usage of data. How can it be over usage of data if it's supposed to be unlimited? They won't help me and every time I call, I get hung up on when they transfer me to a recording. I will never deal with this company ever again. They are ripoffs, telling me the only way I can get my internet back is to go buy another card that I have already paid for that doesn't expire until the 21st of the month. So why would I go buy another card, when in a week they can do the same thing. Someone needs to look into their fraudulent service."[15]

"I have never written a complaint before but straight talks lack of customer service got me so mad that I'm gonna write my first. We switched my daughters phone from at&t to straight talks 'unlimited' plan to save money. For the first 9 months all was well then 20 days into the month they shut the internet off, no warning calls, texts, nothing so I called there so called customer service. First you can barely understand any of them but what I finally did get out of them is that unlimited is really 1.5 gigabytes. Supervisor said she needs to use wifi and that we have to buy another card to get internet back on before transferring me to the bogus recording others have referred to. They should be sued for false advertising."[16]

"Straight Talk customer for just over a year. Apparently unlimited data doesn't mean unlimited anymore. They turned my data off and there is nothing I can do about it. They accused me of tethering my phone. I wouldn't have a clue how to do that. I have used a total of 10.9GB of data since I got my phone on Christmas Day 2012, which is about 2GB of data per month. Straight Talk hides their 'Terms and Conditions of Service' in a link at the bottom of their page. It is not a printable document like every other Straight Talk website page. It is a pop up that cannot be printed. The kicker is I JUST got a 'courtesy' text message from Straight Talk today saying, 'Your Straight Talk service expires soon' on May 17, 2013, so I went and refilled my service plan. They turned my data off within an hour of me paying. I am filing a complaint with the Better Business Bureau as well as contacting the California Public Utilities Commission. Please join me in reporting Straight Talk for their false advertising."[17]

"I have continually had my data shut off... Then one day it got shut off and I called in and asked why they keep shutting it off and the very rude agent said it's because I violated the user agreement? I asked how and she said it is because I am not supposed to be using data? I asked how am I not supposed to be using data when they sold me and I pay for the most expensive plan with "unlimited data"? She then said that we advertise it as unlimited data but you aren't allowed to use it, so you do have access to the data but if you use it, it

---

[15] http://www.consumeraffairs.com/cell_phones/straight_talk_wireless.html
[16] http://www.pissedconsumer.com/reviews-by-company/straight-talk-wireless/dont-be-fooled-20130609416124.html
[17] http://www.straighttalkwirelessforum.com/viewtopic.php?f=6808&t=56981

1121998.4                                                          CLASS ACTION COMPLAINT

1   is violating the user agreement!  WHAT?!  That is the most illegal scam I have ever heard
2   of!"[18]

3   57.    Walmart has received thousands of complaints from angry customers who have

4   purchased Straight Talk phones or service plan cards at their stores.  One Walmart employee

5   expressed his frustration and guilt for having sold Straight Talk phones and service to customers:

6   "I've been working at walmart for the last 3 years selling these phones and dealing with
    [Straight Talk's] customer service.  Within the last 6 months straight talk really started
7   penalizing their customers… Now its almost everyday I see a customer come in who had
    just renewed their service less than a week ago and had their internet service throttled or
8   otherwise inoperable.  I used to talk straight talk up to customers left and right for their
    'unlimited' plan.  I have sold and activated dozens of iPhones on their plan just for then to
9   get screwed over and you know who gets blamed for this?  We do, the walmart
    representatives that talked them into spending $650 to have an iPhone 5 for $45 a month.
10  I like helping customers not screwing them over."[19]

11  58.    Defendants benefit from their practices of falsely advertising that their Straight

12  Talk data plans are "unlimited," throttling or terminating customers' data to cut costs or to keep

13  their wireless network carrier partners happy, and relying on confusing and unconscionable

14  Terms and Conditions that Defendants ensure customers will never see or read to justify their

15  unfair and misleading practices.

16  59.    Defendants' misrepresentations regarding their "unlimited" data plans are material

17  to reasonable consumers.

18  60.    Defendants' practice of throttling or terminating customers' data pursuant to secret

19  data usage caps, or for any other reason, is unfair and is done in bad faith.

20  61.    Defendants' misrepresentations and practices injured and caused Plaintiffs and

21  Class members to lose money or property in that they purchased expensive smartphones, Straight

22  Talk SIM cards, and Straight Talk "unlimited" data plans, but Defendants throttled or terminated

23  the promised "unlimited" data rendering Plaintiffs' and Class members' smartphones essentially

24  useless for their intended purposes.

25

26

27  _____
    [18]  http://www.pissedconsumer.com/reviews-by-company/straight-talk-wireless/straight-talk-shut-
28  off-data-on-unlimited-data-plan-20130302389374.html
    [19] Comment by "jatwalmart" to article by Alex Kuklinski, *supra.*

CLASS ACTION COMPLAINT

1121998.4

# PLAINTIFFS' FACTUAL ALLEGATIONS

## *Plaintiff Edward Tooley*

62.     Prior to February 2013, Plaintiff Edward Tooley IV had wireless phone service through Boost Mobile.  Boost Mobile did not offer unlimited data.  Instead, Boost's advertising and materials expressly provided that Mr. Tooley's plan was limited to 2.5GB of high speed data, after which the data speed would be throttled.

63.     Defendants' marketing and advertisements promising "unlimited" data induced Mr. Tooley to switch to Straight Talk.  Relying on Defendants' promises, on or about January 2013, Mr. Tooley purchased an unlocked Samsung Galaxy S III smartphone from an acquaintance for $350 for use with Straight Talk's "Bring Your Own Phone" program.  Mr. Tooley also purchased a compatible Straight Talk SIM card from Walmart.com for approximately $15 and a Straight Talk "unlimited" 30-day service plan card for $45 from his local Walmart store.

64.     On or about February 6, 2013, Defendants delivered the Straight Talk SIM card to Mr. Tooley.  Mr. Tooley opened the package and followed the activation instructions by inserting the SIM card into his phone and calling customer service to activate his phone and Straight Talk's "unlimited" 30-day data plan.

65.     Defendants did not adequately disclose Straight Talk's Terms and Conditions during these purchases and activation, and Mr. Tooley was at all times unaware of any such terms.

66.     Mr. Tooley used his smartphone and Straight Talk data plan to access email, browse websites, navigate via Google Maps, occasionally stream music using the Pandora app, and occasionally watch videos on YouTube.  While at home, Mr. Tooley typically accessed the internet on his phone via WiFi.  Mr. Tooley never tethered his phone to a computer to access Straight Talk's data and he never used his phone as a WiFi hotspot.

67.     Within only a few days after activating his Straight Talk "unlimited" data plan, Defendants throttled Mr. Tooley's data to extremely slow speeds without warning.  Mr. Tooley

- 17 -

called Straight Talk's customer service, and the representative told him that his data would not be restored to full speed until his new billing cycle began on March 6, 2013.

68.     Defendants restored Mr. Tooley's data speed on March 6 upon his payment. But, only ten days later on March 16, Defendants terminated Mr. Tooley's data altogether without warning. Mr. Tooley could no longer browse websites, use Google Maps or other smartphone apps, or even send an MMS message.

69.     Despite spending hours on the telephone with Straight Talk's customer service, Mr. Tooley was unable to get a straight answer from Defendants regarding why they terminated his data. Instead, Defendants repeatedly transferred him to Straight Talk's "High Data Usage Hotline" recorded message.

70.     After multiple phone calls, a customer service representative promised Mr. Tooley that his data would be restored right away if he paid for another month of service. In reliance on this promise, Mr. Tooley authorized the representative to charge him for another month. But his data was not immediately restored as promised, and he thus paid twice as much for his "unlimited" data plan for the period March 16 through April 6 without actually receiving *any* access to data.

71.     In mid-June, Mr. Tooley switched his phone service to Sprint and purchased a Sprint Samsung Galaxy S III smartphone.

72.     Mr. Tooley reasonably relied upon Defendants' material misrepresentations and omissions, which, in conjunction with Defendants' acts and practices alleged herein caused Mr. Tooley to suffer harm, injury in fact, and lost money or property. Had Mr. Tooley known that Straight Talk's purportedly "unlimited" plan was in fact limited, and that Defendants would throttle or terminate his data at any time without notice, he would not have paid for the SIM card, the unlocked smartphone, or the Straight Talk data plan.

### *Plaintiff Christopher Valdez*

73.     Prior to January 9, 2013, Plaintiff Christopher Valdez had a limited voice and data plan with T-Mobile.

1121998.4

74.    Defendants' marketing and advertisements for "unlimited data" displayed in Mr. Valdez's local Walmart store and on StraightTalk.com induced Mr. Valdez to switch to Straight Talk. Relying on Defendants' promises, on or about January 9, 2013, Mr. Valdez purchased a Straight Talk SIM card and Straight Talk's "unlimited" 30-day service plan from StraightTalk.com for approximately $60 total.

75.    On or about January 14, 2013, Defendants delivered the Straight Talk SIM card to Mr. Valdez. Mr. Valdez opened the package and followed the activation instructions by inserting the SIM card into his smartphone and going to Straighttalksim.com to activate his phone and Straight Talk's "unlimited" 30-day data plan.

76.    Defendants did not adequately disclose Straight Talk's Terms and Conditions during these purchases and activation, and Mr. Valdez was at all times unaware of any such terms.

77.    Mr. Valdez used his smartphone and Straight Talk data plan to access email, navigate via Google Maps, browse websites, and occasionally listen to streaming music. While at home and at work, Mr. Valdez typically accessed the internet on his phone via WiFi. He primarily used Straight Talk's cellular data during his commute to work. Mr. Valdez never tethered his phone to a computer to access Straight Talk's data and he never used his phone as a WiFi hotspot.

78.    On January 30, 2013, only sixteen days after activating his Straight Talk data plan, Straight Talk throttled Mr. Valdez's data service to extremely slow speeds without warning. Mr. Valdez thereafter tested his data download speed and found that it was less than 128Kbps, similar to dial-up speeds.

79.    Straight Talk's customer service informed Mr. Valdez that Defendants throttled his data because he had allegedly violated Sections 6 and 7 of the Straight Talk Terms and Conditions. Having never seen the Terms and Conditions, Mr. Valdez asked the representative where he could find them. She directed him to the StraightTalk.com website, and then to the footer at the bottom of the page containing the link to a small pop-up window with the Terms and

Conditions. Mr. Valdez read Sections 6 and 7 and asked the customer service representative to explain how he violated Sections 6 and 7. She responded that she did not know.

80.     During this call, Mr. Valdez checked the data usage meter on his Nexus 4 smartphone, which showed he had used only 700MB of data since he had activated his Straight Talk data plan. Mr. Valdez asked the customer service representative whether Straight Talk had a data usage limit and, if so, what it was. Straight Talk's customer service representative refused to answer this question.

81.     The customer service representative also refused to issue Mr. Valdez a refund upon request and informed him that Straight Talk would not lift his data restriction before the start of his next month of service on February 14, which was over two weeks away. The representative then urged Mr. Valdez to pay for another month of service, claiming that if he did so, his data would be restored on February 14.

82.     Mr. Valdez asked to speak to and was transferred to a supervisor. The supervisor told Mr. Valdez that he had "misused" his data, but when pressed the supervisor admitted that he did not know how or in what manner Mr. Valdez had purportedly misused his data. The supervisor further stated that Straight Talk's systems do not contain any information on customer data usage, and that there was no way to determine how much data Mr. Valdez had used or in what manner the data was used before Defendants throttled his data speeds. The supervisor also told Mr. Valdez that Straight Talk did not need to notify customers before throttling or terminating their data service. The supervisor then urged Mr. Valdez to transmit payment for another month of service, even though his current plan did not expire for another two weeks.

83.     One day later, Defendants terminated Mr. Valdez's data altogether.

84.     Mr. Valdez immediately began researching other carrier options, and decided to transfer his service to Solavei wireless.

85.     Mr. Valdez filed a complaint against Defendant TracFone with the Southeast Florida Better Business Bureau ("BBB"). Mr. Valdez requested a refund in his complaint.

1121998.4

CLASS ACTION COMPLAINT

TracFone responded that "No Refunds will be issued for this SIM Card or Service Card." Mr. Valdez's complaint was then "administratively closed."

86. Mr. Valdez reasonably relied upon Defendants' material misrepresentations and omissions, which, in conjunction with Defendants' acts and practices alleged herein caused Mr. Valdez to suffer harm, injury in fact, and lost money or property. Had Mr. Valdez known that Straight Talk's purportedly "unlimited" plan was in fact limited, and that Defendants would throttle or terminate his data at any time without notice, he would not have paid for the Straight Talk SIM card or data plan.

### *Plaintiff David Hansell*

87. Prior to July 2012, Plaintiff David Hansell had cellular service with Verizon Wireless.

88. Defendants' marketing and advertisements for the Straight Talk "unlimited" data plan induced Mr. Hansell to switch to Straight Talk. Relying on Defendants' promises, Mr. Hansell purchased an unlocked Samsung Galaxy Exhibit 4G smartphone from Walmart.com for approximately $174, along with a Straight Talk SIM card and an "unlimited" 30-day service plan from StraightTalk.com for $60 total.

89. On July 14, 2012, Mr. Hansell purchased an "Unlimited 1 Year" plan from StraightTalk.com for $495.00 plus tax.

90. On February 27, 2013, Mr. Hansell purchased a Straight Talk branded and locked Samsung Galaxy S II smartphone for $322.92 from a Walmart store.

91. Defendants did not adequately disclose the existence of Straight Talk's Terms and Conditions during these purchases and transactions, and Mr. Hansell at all times was unaware of any such Terms and Conditions.

92. Due to difficulty transferring Mr. Hansell's phone number from his Straight Talk SIM card to his new phone, Straight Talk agreed to extend the expiration date of his 1 Year Plan from July 14, 2013, to August 20, 2013.

1121998.4

CLASS ACTION COMPLAINT

93.     Mr. Hansell primarily used his Straight Talk data to access Google Maps GPS navigation and occasionally stream Google Music during his commute to and from work. While at home and at work, Mr. Hansell typically accessed the internet on his phone via WiFi. Mr. Hansell never tethered his phone to a computer to access Straight Talk's data and he never used his phone as a WiFi hotspot.

94.     On June 7, 2013, Defendants terminated Mr. Hansell's data without warning. Mr. Hansell was consequently unable to use his smartphone for its intended purpose of sending or receiving email, sending MMS messages, browsing the web, or using smartphone apps.

95.     The same day, Mr. Hansell sent an email to Straight Talk customer service asking why his data was not working. A Straight Talk representative provided the following email response: "We regret to inform you that your account has been reviewed and the data service of your phone has been suspended. If you wish to better understand why your data is not working, please call 1-866-793-0474." The phone number the representative provided is to the "High Data Usage Hotline" recorded message.

96.     Mr. Hansell sent a reply email asking when his data service would be restored. Three days later, on June 10, Mr. Hansell received the following email response: "Please be informed that your service end date will be on August 20. Your data will be restored 24 hours after the renewal of your service."

97.     As Mr. Hansell could not afford to go without cellular data for two months, he signed up for service with Virgin Mobile on June 13, 2013. Because his existing Samsung Galaxy S II was locked to Straight Talk's network, he purchased a new Samsung Galaxy S II smartphone for use on Virgin Mobile.

98.     Mr. Hansell requested via email that Straight Talk refund him the over two months of service remaining on his data plan, but received no response.

99.     Mr. Hansell reasonably relied upon Defendants' material misrepresentations and omissions, which, in conjunction with Defendants' acts and practices alleged herein caused Mr. Hansell to suffer harm, injury in fact, and lost money or property. Had Mr. Hansell known that

CLASS ACTION COMPLAINT

Straight Talk's purportedly "unlimited" plan was in fact limited, and that Defendants would throttle or terminate his data at any time without notice, he would not have purchased his Straight Talk smartphone or Straight Talk's "Unlimited 1 Year" data plan.

## CLASS ACTION ALLEGATIONS

100.    Plaintiffs bring this class-action lawsuit on behalf of themselves and the proposed Class members under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

101.    Plaintiffs seek certification of the following Class:

> All persons in the United States who purchased an "unlimited" Straight Talk wireless service plan and whose data was throttled or terminated prior to the expiration of the service plan.

Specifically excluded from the Class are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

102.    ***Numerosity.*** Plaintiffs do not know the exact number of Class members but believe that the Class comprises tens of thousands, if not hundreds of thousands, of consumers throughout the United States. As such, Class members are so numerous that joinder of all members is impracticable.

103.    ***Commonality and predominance.*** Well-defined, nearly identical legal or factual questions affect all Class members. These questions predominate over questions that might affect individual Class members. These common questions include, but are not limited to, the following:

a.    Whether Defendants offered to Plaintiffs and Class members "unlimited" data plans;

b.    Whether Plaintiffs and Class members accepted Defendants' offer for "unlimited" data plans;

c.    Whether the Straight Talk Terms and Conditions were adequately disclosed to and were consented to by Plaintiffs and Class members;

d.    Whether the Straight Talk Terms and Conditions contain illusory terms;

1121998.4

CLASS ACTION COMPLAINT

e.      Whether the Straight Talk Terms and Conditions contain unconscionable terms;

f.      Whether Defendants breached their contracts with Plaintiffs and Class members by throttling or terminating their data prior to the expiration of their data plans;

g.      Whether Defendants acted in bad faith or abused their discretion in throttling or terminating Plaintiffs' and Class members' data prior to the expiration of their data plans;

h.      Whether Defendants' practice of throttling or terminating Plaintiffs' and Class members' data went against Plaintiffs' and Class members' objectively reasonable expectations;

i.      Whether Defendants' promise of "unlimited" data was likely to mislead objectively reasonable consumers;

j.      Whether Defendants engaged in deceptive and unfair business and trade practices under Florida or California law;

k.      Whether Plaintiffs and Class members are entitled to restitution and other equitable relief;

l.      Whether Plaintiffs and Class members are entitled to damages; and

m.      Whether Defendants should be enjoined from engaging in this type of conduct.

104.    *Typicality.* Plaintiffs' claims are typical of Class members' claims. Plaintiffs and the Class members all sustained injury as a direct result of Defendants' practice of throttling or terminating data prior to the expiration of their "unlimited" data plans.

105.    *Adequacy.* Plaintiffs will fairly and adequately protect Class members' interests. Plaintiffs have no interests antagonistic to Class members' interests, and Plaintiffs have retained counsel that has considerable experience and success in prosecuting complex class-action and consumer-protection cases.

CLASS ACTION COMPLAINT

106.   ***Superiority.*** A class action is the superior method for fairly and efficiently adjudicating this controversy for the following reasons without limitation:

a.   Class members' claims are relatively small compared to the burden and expense required to litigate their claims individually, so it would be impracticable for Class members to seek individual redress for Defendants' illegal and deceptive conduct;

b.   Even if Class members could afford individual litigation, the court system could not. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court; and

c.   Plaintiffs anticipate no unusual difficulties in managing this class action.

### INAPPLICABLE OR UNENFORCEABLE ARBITRATION CLAUSE

107.   Section 15 of the Straight Talk Terms and Conditions purports to require that certain disputes be individually arbitrated. Section 15 is unenforceable because it is unconscionable and/or is against public policy. Section 15 is substantively unconscionable because, among other reasons, it lacks mutuality in that it purports to require consumers to arbitrate all claims while explicitly permitting Defendants to bring state or federal lawsuits for certain types of claims important to Defendants; it requires consumers to bear their own attorneys' fees and costs, even where, as here, the law allows for the prevailing party to be awarded such fees and costs; it requires arbitrations to occur in Miami, Florida regardless of the consumer's state of residence; it prohibits certain types of damages; and it provides that consumers must pay a minimum claim filing fee of $200 per AAA rules effective March 1, 2013. Section 15 is procedurally unconscionable because it is presented to consumers, if at all, on a take-it-or-leave-it basis and is not conspicuous.

108.   Section 15 is not enforceable as to any of Plaintiffs' and Class members' claims because it is illusory, in that Defendants reserve the right to modify or change it at any time without notice to or consent from consumers.

109. Section 15 is not applicable to Plaintiffs' claims for public injunctive relief, because such claims are not arbitrable.

110. To the extent that Defendants assert that Plaintiffs' and Class members' claims are subject to an arbitration agreement or a class action waiver, Plaintiffs and the Class seek declaratory relief in the form of a finding that such a purported arbitration agreement is void and unenforceable.

## CHOICE OF LAW

111. Florida law applies to Plaintiffs' and Class members' claims because (1) a substantial part of the alleged misleading and deceptive conduct emanated from Florida and (2) the bad faith, unfair, and unlawful conduct occurred in Florida.

112. In the alternative, the laws of the states in which each Plaintiff and each Class member resides apply.

## COUNT I
## Breach of Contract

113. Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

114. Defendants offered to Plaintiffs and Class members "unlimited" data plans for use with Straight Talk SIM cards or Straight Talk branded and locked smartphones.

115. In exchange for Defendants' promise of "unlimited" data plans, Plaintiffs and Class members paid $45, $60, $130, $255, or $495 for the 1-month, 1-month international, 3-month, 6-month, or 1-year data plans, respectively, and also paid approximately $15 for a Straight Talk SIM card or several hundreds of dollars for Straight Talk branded and locked smartphones.

116. Plaintiffs and Class members gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed.

117. Defendants breached their promise of providing "unlimited" data by throttling or terminating Plaintiffs' and Class members' data prior to the expiration of their data plans.

118. The Straight Talk Terms and Conditions do not form a contract and are not a part of the above-described bargain for lack of mutual assent. Defendants do not (a) adequately

1    disclose the existence of such terms to Plaintiffs or Class members prior to or at the time of the

2    purchase and activation of their Straight Talk data plans; (b) require Plaintiffs or Class members

3    to acknowledge or assent to the Terms and Conditions; or (c) provide an opportunity for Plaintiffs

4    or Class members to reject the terms in the event that they discover the terms subsequent to the

5    purchase and activation of their data plans. Defendants also do not provide any new

6    consideration in exchange for any subsequent agreement to the Terms and Conditions.

7        119.    The Straight Talk Terms and Conditions do not form a contract and are not a part

8    of the above-described bargain because the terms described therein are illusory. Specifically, the

9    Terms and Conditions provide that Straight Talk may change or modify the terms at any time, in

10   its sole discretion, and without notice to or consent from Plaintiffs or Class members, rendering

11   all of the terms therein illusory.

12       120.    In the alternative, assuming that the Straight Talk Terms and Conditions do form

13   part of the basis of the bargain, Sections 6, 7, and 15 of the Terms and Conditions are

14   unconscionable and, therefore, unenforceable.

15       121.    In the alternative, assuming that the Straight Talk Terms and Conditions do form

16   part of the basis of the bargain, Sections 6 and 7 of the Terms and Conditions are so

17   contradictory, vague, and ambiguous as to render them meaningless and unenforceable.

18       122.    Defendants directly benefitted from, and are being unjustly enriched by, their

19   breach of their promise to provide "unlimited" data.

20       123.    As a result of Defendants' breach of their promise to provide "unlimited" data,

21   Plaintiffs and Class members have been harmed and have suffered damages in an amount to be

22   determined by this Court, including interest on all liquidated sums.

23                                    **COUNT II**
24                **Breach of the Covenant of Good Faith and Fair Dealing**

25       124.    Plaintiffs reallege and incorporate by reference every allegation set forth in the

26   preceding paragraphs as though alleged in this Count.

27       125.    Plaintiffs and Class members bring this claim in the alternative to their Breach of

28   Contract claim.

1121998.4

126.    A covenant of good faith and fair dealing is implied in every contract.

127.    Where a contract vests one party with discretion, but provides no standards for exercising that discretion, the duty of good faith and fair dealing applies and the party exercising the discretion must do so in a commercially reasonable manner or in a manner that satisfies the objectively reasonable expectations of the other party.

128.    Based on Defendants' promises and representations, it was objectively reasonable for Plaintiffs and Class members to expect that Defendants would deliver "unlimited" data in connection with their data plans.  There exists no objectively reasonable reason to expect that Defendants would have secret data usage limits and throttle or terminate Plaintiffs' and Class members' data at any time, without warning, and for any or no reason, regardless of the manner in which the data was used.

129.    Defendants abused any discretion they had under the Straight Talk Terms and Conditions or otherwise by regularly throttling or terminating Plaintiffs' and Class members' promised "unlimited" data, often without notice, without regard to the manner in which the data was used, and without explanation to Plaintiffs and Class members.

130.    Plaintiffs and Class members performed all required duties, and all conditions required for Defendants' performance occurred.

131.    As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs and the Class sustained damages in an amount to be determined by this Court, including interest on all liquidated sums.

### COUNT III
#### Unjust Enrichment

132.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

133.    Plaintiffs and Class members bring this claim in the alternative to their Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing claims.

134.    Defendants knowingly retained a benefit at the expense of Class members, in the form of substantial revenues and payments from Plaintiffs' and Class members for Straight Talk

1121998.4

CLASS ACTION COMPLAINT

"unlimited" data plans, phones, and SIM cards, from Defendants' conduct in misrepresenting that their data plans were "unlimited" and regularly throttling or terminating "unlimited" customers' data access.

135. Plaintiffs' and Class members' detriment and Defendants' enrichment are traceable to, and resulted directly and proximately from, the conduct challenged in this Complaint.

136. It would be inequitable for Defendants to retain the benefits they received and continue to receive from Plaintiffs' and Class members without payment to Plaintiffs and Class members.

137. Plaintiffs and the Class have no adequate remedy at law.

138. Plaintiffs seek disgorgement of and/or a constructive trust on all of the inequitable payments and profits Defendants retained from Plaintiffs and Class members.

## COUNT IV
### Violations of Florida's Deceptive and Unfair Trade Practices Act
### Florida Statutes § 501.201, *et seq.*

139. Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

140. Section 501.204 of the Florida Statutes prohibits "unfair," "deceptive," or "unconscionable" acts or practices.

141. Defendants' acts and practices of regularly throttling or terminating "unlimited" customers' data, often without notice, were "unfair" because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

142. Defendants' material misrepresentations that their data plans were "unlimited" when they were not, and Defendants' failure to disclose and/or active concealment of material information regarding their practice of regularly throttling or terminating customers' data, were "deceptive" in that they were likely to deceive consumers acting reasonably in the same circumstances.

1121998.4

143. Defendants' acts and practices of throttling or terminating data and purporting to impose onerous Terms and Conditions on consumers after consumers purchased Defendants' Straight Talk service plans, phones, and SIM cards were "unconscionable" in that Defendants abused their position of superior power and their acts were so unfair or oppressive as to shock the conscience or offend public policy.

144. As a direct and proximate result of Defendants' material misrepresentations and nondisclosures, Plaintiffs and the Class have been irreparably harmed and have suffered losses.

145. On behalf of the Class, Plaintiffs seek an order enjoining Defendants from engaging in such unfair, deceptive, or unconscionable practices. Plaintiffs also seek damages, including but not limited to awarding the full amount of money that Plaintiffs and Class members paid for their Straight Talk service plans, compatible phones, and SIM cards and/or restitutionary disgorgement of profits. Plaintiffs also seek an award of attorneys' fees and costs.

**COUNT V**
**Violations of California's Unfair Competition Law**
**California Business & Professions Code § 17200 _et seq.,_**

146. Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

147. Section 17200 of the California Business & Professions Code ("UCL") prohibits any "unlawful," "unfair," or "fraudulent" business practice.

148. Defendants violated the "unlawful" prong of the UCL by making material misrepresentations that their data plans offer "unlimited" data, when in fact Defendants regularly throttle or terminate customers' data, in violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 _et seq._

149. Defendants' practice of regularly throttling or terminating customers' "unlimited" data, often without notice, violated the "unfair" prong of the UCL because it was immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class members. Defendants' practice was also contrary to legislatively declared and public policy and the harm it caused to consumers outweighed its utility, if any.

1121998.4

150.    Defendants violated the "fraudulent" prong of the UCL by making material misrepresentations that its data plans were "unlimited" when they were not, and by failing to disclose and actively concealing material information regarding their practice of regularly throttling or terminating customers' data.  These material misrepresentations and nondisclosures were likely to mislead consumers.

151.    Plaintiffs relied on Defendants' material misrepresentations and nondisclosures, and would not have purchased, or would have paid less money for, Straight Talk service plans, compatible phones, or SIM cards had they known the truth.

152.    As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent conduct, Plaintiffs lost money or property.

153.    Defendants' conduct caused substantial injury to Plaintiffs and Class members. Accordingly, Plaintiffs seek an order enjoining Defendants from committing such unlawful, unfair, and fraudulent business practices, and seek the full amount of money that Plaintiffs and Class members paid for their Straight Talk service plans, compatible phones, and SIM cards and/or restitutionary disgorgement of profits.  Plaintiffs also seek attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

## COUNT VI
### Violations of California's Consumer Legal Remedies Act
### California Civil Code §1750 *et seq.*

154.    Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

155.    Defendants are "persons," as defined by Cal. Civ. Code § 1761(c).

156.    Plaintiffs and the Class members are "consumers," as defined by Cal. Civ. Code §1761(d).

157.    The service plans, phones, and SIM cards that Defendants marketed and sold constitute "goods" and "services," as defined by Cal. Civ. Code §1761(a) and (b).

1121998.4

158. Plaintiffs' and Class members' purchases of Straight Talk service plans, compatible phones, and SIM cards constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

159. Plaintiffs and Class members purchased Straight Talk service plans, compatible phones, and SIM cards for personal, family, and household purposes as meant by Cal. Civ. Code § 1761(d).

160. Venue is proper under Cal. Civil Code § 1780(d) because a substantial portion of the transactions at issue occurred in this county. Plaintiffs' declarations establishing that this Court has proper venue for this action are attached as Exhibit A.

161. Defendants deceived consumers in that they misrepresented that Straight Talk service plans offered "unlimited" data and also failed to disclose or actively concealed that they would regularly throttle or terminate customers' data.

162. Defendants' misrepresentations, active concealment, and failures to disclose violated the CLRA in the following manner:

a. Defendants misrepresented that their Straight Talk service plans, phones, and SIM cards had characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

b. Defendants misrepresented that their Straight Talk service plans, phones, and SIM cards were of a particular standard, quality, and/or grade when they were of another (Cal. Civ. Code § 1770(a)(7));

c. Defendants advertised their Straight Talk service plans, phones, and SIM cards with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

d. Defendants misrepresented that their Straight Talk service plans, phones, and SIM cards conferred or involved rights, remedies, or obligations that they did not have (Cal. Civ. Code § 1770(a)(14));

1121998.4

1          e.      Defendants misrepresented that their Straight Talk service plans, phones,

2   and SIM cards were supplied in accordance with previous representations when they were not

3   (Cal. Civ. Code § 1770(a)(16));

4          f.      Defendants inserted unconscionable provisions in the Straight Talk Terms

5   and Conditions, including Sections 6, 7, and 15 (Cal. Civ. Code § 1770(a)(19)).

6          163.    Defendants' misrepresentations and nondisclosures regarding Straight Talk

7   "unlimited" data plans and their practice of regularly throttling and terminating customers' data

8   were material to Plaintiffs and Class members because a reasonable person would have

9   considered them important in deciding whether or not to purchase the Straight Talk service plans,

10  phones, and SIM cards, and because Defendants had a duty to disclose the truth.

11         164.    Plaintiffs and Class members relied upon Defendants' material misrepresentations

12  and nondisclosures, and had Plaintiffs and Class members known the truth, they would have acted

13  differently.

14         165.    As a direct and proximate result of Defendants' material misrepresentations and

15  nondisclosures, Plaintiffs and the Class have been irreparably harmed.

16         166.    On behalf of the Class, Plaintiffs seek injunctive relief in the form of an order

17  enjoining Defendants from making such material misrepresentations and failing to disclose or

18  actively concealing their practice of throttling or terminating data.  Plaintiffs also seek attorneys'

19  fees and costs.

20         167.    In accordance with Cal. Civ. Code § 1782(a), on July 24, 2013, Plaintiffs' counsel

21  served Defendants with notice of their CLRA violations by certified mail, return receipt

22  requested.  A true and correct copy of that notice is attached as Exhibit B.

23         168.    If Defendants fail to provide appropriate relief for their CLRA violations within 30

24  days of Plaintiffs' July 24, 2013, notification letter, Plaintiffs will amend this complaint to seek

25  compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b).

26

27

28

CLASS ACTION COMPLAINT

1

2

**COUNT VII**
**Unconscionability**

3      169.    Plaintiffs reallege and incorporate by reference every allegation set forth in the

4  preceding paragraphs as though alleged in this Count.

5      170.    Defendants' practice of offering "unlimited" data plans while simultaneously

6  purporting to retain the right to arbitrarily and unilaterally throttle or terminate data at any time

7  and for any reason, with or without warning, is unfair and unconscionable.

8      171.    Plaintiffs and Class members have no meaningful choice with respect to the

9  Straight Talk Terms and Conditions or Defendants' unilateral and arbitrary practice of throttling

10  and terminating data.  The Terms and Conditions were not adequately disclosed, if at all, to

11  Plaintiffs and Class members before or during their purchases and activations of Straight Talk's

12  service plans, phones, and SIM cards, and are in any event offered on a take-it-or-leave-it basis.

13  Defendants do not offer Plaintiffs or Class members an opportunity to reject the terms, and

14  Straight Talk data plans and SIM cards are non-refundable.

15      172.    Defendants' purported discretion to throttle or terminate data is unreasonably

16  favorable to Defendants and unduly harsh with respect to Plaintiffs and the Class, and is therefore

17  substantively unconscionable.

18      173.    Defendants' enforcement of such unconscionable terms have harmed Plaintiffs and

19  Class members and have caused them to suffer damages in an amount to be determined by this

20  Court, including interest on all liquidated sums.

**PRAYER FOR RELIEF**

21

22      1.    On behalf of themselves and the Class, Plaintiffs request that the Court order relief

23  and enter judgment against Defendants as follows:

24      2.    An order certifying Plaintiffs' proposed Class and appointing Plaintiffs and their

25  counsel to represent the Class;

26      3.    An order that Defendants are permanently enjoined from their improper conduct

27  and practices as alleged;

28

1121998.4

CLASS ACTION COMPLAINT

4.      A judgment awarding Plaintiffs and Class members restitution, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained as a result of their unlawful, unfair, and fraudulent business practices and conduct;

5.      A judgment awarding Plaintiffs and Class members actual damages;

6.      A judgment awarding Plaintiffs and Class members exemplary damages for Defendants' knowing, willful, and intentional conduct;

7.      Pre-judgment and post-judgment interest;

8.      Attorneys' fees, expenses, and the costs of this action; and

9.      All other and further relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: July 24, 2013                    Respectfully submitted,

                                        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP




                                        By: _____
                                             Michael W. Sobol

                                        Michael W. Sobol
                                        msobol@lchb.com
                                        Nicole D. Reynolds
                                        nreynolds@lchb.com
                                        LIEFF CABRASER HEIMANN & BERNSTEIN LLP
                                        275 Battery Street, 29th Floor
                                        San Francisco, CA  94111
                                        Telephone:  (415) 956-1000

                                        Daniel M. Hattis
                                        dan@hattislaw.com
                                        HATTIS LAW
                                        1134 Crane Street, Suite 216
                                        Menlo Park, CA 94025
                                        Telephone:  (650) 980-1990

1121998.4                                               CLASS ACTION COMPLAINT

1

2
Cornelius P. Dukelow
cdukelow@abingtonlaw.com
3
ABINGTON COLE
320 South Boston Avenue, Suite 1705
4
Tulsa, Oklahoma 74103
Telephone: (918) 588-3400
5

6
*Attorneys for Plaintiffs*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EX. A

1   Michael W. Sobol (State Bar No. 194857)
    Nicole D. Reynolds (State Bar No. 246255)
2   LIEFF CABRASER HEIMANN & BERNSTEIN LLP
    275 Battery Street, 29th Floor
3   San Francisco, CA  94111
    Telephone:  (415) 956-1000
4   E-mail: msobol@lchb.com
    nreynolds@lchb.com
5
    Daniel Hattis (State Bar No. 232141)
6   HATTIS LAW
    1134 Crane Street, Suite 216
7   Menlo Park, CA 94025
    Telephone:  (650) 980-1990
8   E-mail: dan@hattislaw.com

9   Attorneys for Plaintiff

10              UNITED STATES DISTRICT COURT

11           NORTHERN DISTRICT OF CALIFORNIA

12              SAN FRANCISCO DIVISION

13

14  GABRIEL CHARLES, MICHAEL          Case No. _____
    FREELAND, , BRIAN GERVAIS,
15  EDWIN GLOVER, DAVID HANSEL,       **CLASS ACTION COMPLAINT**
    EDWARD TOOLEY, and
16  CHRISTOPHER VALDEZ, individually  **DECLARATION OF DAVID HANSELL**
    and on behalf of all others similarly
17  situated,

18              Plaintiffs,

19  v.

20  TRACFONE WIRELESS, INC., d.b.a.
    STRAIGHT TALK WIRELESS and
21  WAL-MART STORES, INC.,

22              Defendants.

23

24

25

26

27

28

    1092383.1                              DECLARATION OF DAVID HANSELL

1   I, David Hansell, hereby declare and state as follows:

2      1.      I am over the age of 18, and a Plaintiff in this action. The facts contained in this

3   declaration are based on my personal knowledge, and if called upon to do so, I could and would

4   testify competently hereto.

5      2.      The complaint in this action, filed concurrently with this declaration, is filed in the

6   proper place for trial under California Civil Code § 1780(d), because this is a county in which the

7   Defendants do business and where a substantial portion of the transactions occurred.

8

9      I declare under penalty of perjury under the laws of the United States and the State of

10  California that the foregoing is true and correct.

11  Executed on July ___11___, 2013, in ___Redondo Beach___ California.

12

13

14                                              David Hansell

Michael W. Sobol (State Bar No. 194857)
Nicole D. Reynolds (State Bar No. 246255)
LIEFF CABRASER HEIMANN & BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  (415) 956-1000
E-mail: msobol@lchb.com
nreynolds@lchb.com

Daniel Hattis (State Bar No. 232141)
HATTIS LAW
1134 Crane Street, Suite 216
Menlo Park, CA 94025
Telephone:  (650) 241-6495
E-mail: dan@hattislaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GABRIEL CHARLES, MICHAEL FREELAND, , BRIAN GERVAIS, EDWIN GLOVER, DAVID HANSEL, EDWARD TOOLEY, and CHRISTOPHER VALDEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRACFONE WIRELESS, INC., d.b.a. STRAIGHT TALK WIRELESS and WAL-MART STORES, INC.,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DECLARATION OF EDWARD TOOLEY** |

1    I, Edward Tooley, hereby declare and state as follows:

2    1.    I am over the age of 18, and a Plaintiff in this action. The facts contained in this

3    declaration are based on my personal knowledge, and if called upon to do so, I could and would

4    testify competently hereto.

5    2.    The complaint in this action, filed concurrently with this declaration, is filed in the

6    proper place for trial under California Civil Code § 1780(d), because this is a county in which the

7    Defendants do business and where a substantial portion of the transactions occurred.

8

9    I declare under penalty of perjury under the laws of the United States and the State of

10   California that the foregoing is true and correct.

11   Executed on July __11__, 2013, in Alameda, California.

12

13   _Edward Tooley_ (w)    JUL 11 2013

14   Edward Tooley

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Michael W. Sobol (State Bar No. 194857)
     Nicole D. Reynolds (State Bar No. 246255)
2    LIEFF CABRASER HEIMANN & BERNSTEIN LLP
     275 Battery Street, 29th Floor
3    San Francisco, CA  94111
     Telephone:  (415) 956-1000
4    E-mail: msobol@lchb.com
     nreynolds@lchb.com
5
     Daniel Hattis (State Bar No. 232141)
6    HATTIS LAW
     1134 Crane Street, Suite 216
7    Menlo Park, CA 94025
     Telephone:  (650) 980-1990
8    E-mail: dan@hattislaw.com

9    Attorneys for Plaintiff

10                          UNITED STATES DISTRICT COURT

11                        NORTHERN DISTRICT OF CALIFORNIA

12                              SAN FRANCISCO DIVISION

13

14
     GABRIEL CHARLES, MICHAEL              Case No. _____
15   FREELAND, , BRIAN GERVAIS,
     EDWIN GLOVER, DAVID HANSEL,           **CLASS ACTION COMPLAINT**
16   EDWARD TOOLEY, and
     CHRISTOPHER VALDEZ, individually      **DECLARATION OF CHRISTOPHER**
17   and on behalf of all others similarly **VALDEZ**
     situated,
18
                       Plaintiffs,
19
     v.
20
     TRACFONE WIRELESS, INC., d.b.a.
21   STRAIGHT TALK WIRELESS and
     WAL-MART STORES, INC.,
22
                       Defendants.
23

24

25

26

27

28

1    I, Christopher Valdez, hereby declare and state as follows:

2    1.    I am over the age of 18, and a Plaintiff in this action. The facts contained in this

3    declaration are based on my personal knowledge, and if called upon to do so, I could and would

4    testify competently hereto.

5    2.    The complaint in this action, filed concurrently with this declaration, is filed in the

6    proper place for trial under California Civil Code § 1780(d), because this is a county in which the

7    Defendants do business and where a substantial portion of the transactions occurred.

8

9    I declare under penalty of perjury under the laws of the United States and the State of

10   California that the foregoing is true and correct.

11   Executed on July  ll   , 2013, in  San Diego      California.

12

13

14                                        Christopher Valdez

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1092383.1                           - 2 -            DECLARATION OF CHRISTOPHER VALDEZ

Ex. B

**Lieff
Cabraser
Heimann&
Bernstein**

Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
t 415.956.1000
f 415.956.1008

July 24, 2013

## VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED

Frederick J. Pollak, President and CEO
TracFone Wireless, Inc.
9700 NW 112 Ave.
Miami, FL 33178

Mike Duke, President and CEO
Wal-Mart Stores, Inc.
702 SW 8th Street
Bentonville, AR 72716

Registered Agent for Service of Process
Corporate Creations Network, Inc.
131-A Stoney Circle, Suite 500
Santa Rosa, CA 95401

Registered Agent for Service of Process
C.T. Corporation System
818 W. Seventh Street
Los Angeles, CA 90017

Re:   Notice of Violation of California Consumer Legal Remedies Act

Dear Mr. Pollak and Mr. Duke:

We represent Edward Tooley, David Hansel, and Christopher Valdez, who purchased Straight Talk "unlimited" wireless phone plans. We send this letter under the California Consumers Legal Remedies Act, California Civil Code Section 1750 *et seq.* ("CLRA"), to notify TracFone Wireless, Inc. ("TracFone") and Wal-Mart Stores, Inc. ("Walmart") that their practice of advertising Straight Talk plans as providing "unlimited" data, while also regularly throttling or terminating subscribers' data, often without notice, when their data usage exceeds certain undisclosed limits or arbitrarily at the direction of network carrier partners, violates the CLRA. We demand that TracFone and Walmart rectify their violations within 30 days of receipt of this letter.

TracFone and Walmart misrepresent to consumers that their Straight Talk wireless phone plans offer "unlimited" web and data access and that consumers may use the data access to operate their smartphones as virtual PCs by browsing the internet, streaming music and videos, or playing video games. In reality, TracFone and Walmart, through their joint venture Straight Talk, regularly throttle subscribers' data speeds or terminate data altogether without notice. TracFone and Walmart refuse to disclose their data usage caps or explain under what circumstances they might throttle or terminate data, making the practice all the more unclear and deceptive to consumers. Moreover, TracFone and Walmart purport to rely on the Straight Talk Terms and Conditions of Service when throttling or terminating subscribers' data, but

these terms are never given to or seen by customers and are riddled with vague, contradictory, unconscionable, and illusory terms.

Relying on TracFone's and Walmart's promise of "unlimited" data, on or about January 2013, Edward Tooley purchased an unlocked Samsung Galaxy S III smartphone from an acquaintance for $350 for use with Straight Talk's "Bring Your Own Phone" program. Mr. Tooley also purchased a compatible Straight Talk SIM card from Walmart.com for approximately $15 and Straight Talk's "unlimited" 30-day service plan for $45 from his local Walmart store. In February, within only a few days after activating his Straight Talk "unlimited" data plan, Straight Talk throttled Mr. Tooley's data to extremely slow speeds without warning. Straight Talk restored Mr. Tooley's data speed on March 6 upon his payment. But, only ten days later on March 16, Straight Talk terminated Mr. Tooley's data access altogether without warning. After multiple phone calls, a customer service representative promised Mr. Tooley that his data would be restored right away if he paid for another month of service. In reliance on this promise, Mr. Tooley authorized the representative to charge him for another month. But his data was not immediately restored as promised.

Similarly, advertisements for the Straight Talk "unlimited" data plan induced David Hansell to purchase a 1-year plan from StraightTalk.com for $495.00. Mr. Hansell also purchased a Straight Talk branded and locked Samsung Galaxy S II smartphone from a Walmart store for $322.92. On June 7, 2013, Defendants terminated Mr. Hansell's data without warning. Straight Talk informed him that his data would not be restored until his current plan expired on August 20, 2013 and he paid for a new plan.

Advertisements for Straight Talk's "unlimited" data plan likewise induced Christopher Valdez to purchase a Straight Talk SIM card and data plan on StraightTalk.com for his unlocked smartphone. On January 30, 2013, only sixteen days after he activated his plan and after using only 700MB of data, Straight Talk throttled Mr. Valdez's data speed without warning. Straight Talk terminated Mr. Valdez's data altogether the next day. Straight Talk informed Mr. Valdez his data would not be restored until his current plan expired on February 14.

TracFone's and Walmart's material misrepresentations, active concealment, and failures to disclose violated the CLRA in the following manner:

1. TracFone and Walmart misrepresented that their Straight Talk phones, SIM cards, and data plans had characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

2. TracFone and Walmart misrepresented that their Straight Talk phones, SIM cards, and data plans were of a particular standard, quality, and/or grade when they were of another (Cal. Civ. Code § 1770(a)(7));

July 24, 2013
Page 3

3.    TracFone and Walmart advertised their Straight Talk phones, SIM cards, and data plans with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

4.    TracFone and Walmart misrepresented that their Straight Talk phones, SIM cards, and data plans conferred or involved rights, remedies, or obligations that they did not have (Cal. Civ. Code § 1770(a)(14));

5.    TracFone and Walmart misrepresented that their Straight Talk phones, SIM cards, and data plans were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16));

6.    TracFone and Walmart inserted unconscionable provisions in the Straight Talk Terms and Conditions (Cal. Civ. Code § 1770(a)(19)).

We demand that within thirty (30) days of receiving this letter, TracFone and Walmart agree to (1) refrain from engaging in the deceptive practices described above at any time in the future; and (2) return all money that Straight Talk "unlimited" subscribers—whose data Straight Talk throttled or terminated—paid for Straight Talk phones, SIM cards, and/or "unlimited" plans. If TracFone and Walmart refuse to provide the demanded relief within thirty (30) days, we will seek compensatory and punitive damages, restitution, and any other appropriate equitable relief.

We sincerely hope to confer with you to resolve these violations without the need for litigation. I invite you to contact me to discuss this demand at any time. I can be reached at (415) 956-1000 ext. 2230 or nreynolds@lchb.com. I look forward to hearing from you.

Very truly yours,

Nicole D. Reynolds

1040828.1